Ewing, C. J.
The only question presented in this case to our examination is, whether the assignment made by. Elihu Price to-the plaintiffs below, was valid as to the negro child Betty,' and transferred to them her services.. The right of Price at the time of the assignment to the services of the child until the age of twenty-one years, is not questioned-; nor the formality and sufficiency of the instrument, if the child, or more properly, the services of the child, during the residue of that period, were legally assignable.
The first section of the act for the gradual abolition of slavery, Rev. Laws, 679, upon which it is avowed the resolution of the question depends, seems too plain to sustain a doubt. “ Every child born of a slave within this state since the fourth day of July, 1804, or which shall hereafter be born as aforesaid, shall be free, but shall remain the servant of the owner of his or her mother, and the executors, administrators or assigns of such owner, in the same manner as if *169] such child had been bound to serve by *the trustees or overseers of the poor, and shall continue in such service, if a male, until the age of twenty-five years, and if a female, *213 until the age of twenty-one years.” By the explicit terms of this section, the assignability of the servant is established. The child shall remain the servant of the owner of the mother, and of the assigns of the owner, until the specified age. Such phraseology admits but one construction. Nor when one transfer has been made by the owner of the mother, does the servant cease to be assignable, so that the assignee cannot transfer to another person. Independent of the manifest and utter improbability that such was the intention of the legislature, and of the incongruity of such a limitation if a transfer be at all admitted, the letter of the section is hostile to it. The term assigns, comprehends not merely a single person, but a line or succession of persons. Its use, in this way, in respect to real estate, is very familiar.
It was insisted at the bar by the plaintiff’s counsel, that the assignment in question was invalid, because the child could not, according to the act, be held by any other person than the owner of the mother, nor be transferred, without in like manner and at the same time, the transfer of the mother. This argument finds not the slightest- support in the act. On the contrary it is clearly repudiated. The child is to remain the servant of the owner of the mother. If the sentence had stopped there, the position insisted on would have had some semblance of support; but, as if to preclude doubt or misapprehension, it proceeds, “ and the executors, administrators or assigns of such owner.” Moreover, the inadmissible consequence would necessarily result, and indeed such seemed to be the opinion of the plaintiff’s counsel, that the death or manumission of the mother would at once discharge the child. Nothing but the most unequivocal language should induce the belief that the legislature intended to expose the owner, after the expense of nursing and maintaining the child during the helpless years of infancy, to be cut off from all remuneration by the premature decease of the mother, or to the loss of the services of the child by a liberal and generous manumission of its parent.
*214 The argument of the plaintiff’s counsel against the validity of the assignment was mainly placed on the provision in the section under consideration, that the child “ shall remain a servant,” in the same manner as if such child had been “ bound to service by the trustees or overseers of the poor.” *170] An indented servant, it *was said, cannot be assigned nor can an apprentice. Therefore, as the child is to remain in the same manner, no assignment can be made. It is manifest, however, that the case bears no analogy to that of an apprentice, and the reason of the one cannot fairly apply to the other; nor is it so perfectly clear as was assumed by the plaintiff’s counsel, that the indented servant may not be assigned. But without entering at all into the examination of these questions, it is a sufficient answer to the argument to advert again to the act. It makes in express terms, the kind of servant now in question, assignable, whatever may be the rule with regard to an indented servant or an apprentice. The servant is to remain in the same manner as if bound to service by the trustees or overseers, not only in the hands of the owner, but of the assigns of such owner. The provision, then, declaring the manner in which the servant shall remain, was clearly not intended to restrain or deny the assignability, but for other purposes.
It was further contended, that the servant is not property and, therefore, cannot pass by an assignment. But this is erroneous. The services of a slave, and the services of the servant now in question, are a species of property, long and clearly recognized as such by the law's, customs and business of the state; deemed valuable to the owner; and transferred from one citizen to another like other personal property. "With the question of abstract or original right to such property, we have here nothing to do; nor with its policy.
In the course of the argument much inconvenience was anticipated, and many abuses predicted from permitting these servants to be assigned; and the affliction induced by *215 the separation of children and parents, was portrayed in vivid colors. It cannot, however, fail to be recollected, that however justly arguments ab incouvenienti may be presented, where the construction of a statute is doubtful, they are not admitted where the language is clear, and the design and intention manifest. Fisher v. Blight, 2 Cranch. 386. If the pictures exhibited by the plaintiff’s counsel •were drawn from real life; if fact, not fancy, sat for the portrait, the power of the legislature might properly be invoked. Much, too, was said, and justly, in reprobation of personal and domestic slavery in every form ; and however we may yield as men and as citizens to the truth of the remarks which did honor to the head and -heart of the counsel who submitted them, yet even they, we are persuaded, *will not expect that we, sitting in this hall, [*171 should, from such considerations, refuse obedience to a constitutional and unambiguous act of the legislature. Our duty is jus dicere, non dare.
Ford, J.
An action on the case was brought before a justice of' the peace against Oliver W. Ogden, for harboring a black girl named Betty, about thirteen years of age, alleged to be the servant of the plaintiffs. She was born since the fourth of July, .1804, and had been sold, together with her parents, who wore slaves, on the tenth of April, 1816, by Mr. Ogden to Thomas Morrell; and on the thirty-first of March, 1817, Mr. Morrell sold all three of them to Phineas Moore; who, on the fourteenth of April, 1824, sold them to Elihu Price; and he, on taking the benefit of the act, had assigned them, together with all his other property, to the plaintiffs below, as assigneess, under the statute, for the benefit of his creditors. Mr. Morrell had agreed verbally with the parents of the girl, at the time -when he purchased them, to manumit and set them free at the expiration of seven years, provided they would serve him faithfully till the end of that time; this promise was renewed to thorn by *216 Mr. Moore, at the time of his purchasing them ; but he had not fulfilled it; and as they were approaching the age of forty when he sold them, he recommended to Elihu Price to have it done before they should attain to that age, and was promised that it should be done; but Mr. Price failed, and took the benefit of the act before it was accomplished. It was insisted that the black girl Betty was no longer a servant. By the act for the gradual abolition of slavery, Rev. Laws 679, sec. 1, though born of a slave she was born free; but the -statute says, “ she shall remain the servant of the owner of the mother, and the executors, administrators or assigns of such owner, in the same manner as if such child had been bound out to service by the overseers of the poor, and shall continue in such service until she attains the age of twenty-one years.” She is to remain a servant of the owner of the mother; and did so remain, it was argued, as long as there was any owner of the mother to claim her service; but when her mother became free, under the foregoing promises, at the end of seven years, and ceased to have a legal owner, there was no person of that description to claim the services of Betty, and that consequently she could not lawfully be constrained to serve any *172] body. This argument takes for granted *what yet remains to be proved, that verbal promises of freedom, without any act or record of manumission, made the parents free at the end of seven years. Supposing this for . argument’s sake were true, that the mother became free at the end of seven years, how could her subsequent acquisition of freedom have any influence over the condition of the child.| The condition of service attached to the child from the circumstances of its birth; it resulted from being born of a slave ; it was separated at its birth from the fate, and was no longer to follow the destiny of the mother; for according to the wording of the statute, it was to remain and continue a servant till the age of twenty-one years, and consequently its condition could not vary with the subsequent condition *217 of the mother. A right to the services of the child resulted to, and vested in, the person, who was owner of the mother at the time the child was born; but this right was not ordered by the statute to attend and follow such ownership wherever it might afterward go; it vyas made to be exactly the contrary, a right that might pass to executors, administrators or assigns ; it was a right made assignable by itself, and consequently it might be vested in one person by assignment, while the ownership of the mother was in another. This right of service was to be as independent as if it had been acquired by indenture from the trustees and overseers of the poor. The overseers have power to bind out the children of poor parents till eighteen; but was it ever supposed that a subsequent change in the condition of the parents, as if they should suddenly become rich, would vacate the indenture ? If not, then how could this statutory indenture become void by the subsequent condition of the mother? If the mother’s freedom could unbind the child and discharge it from service, it would paralyze that entire clause in the statute which declares that such child shall remain and continue in such service till she attains the age of twenty-one years. The conclusion is inevitable that the child must continue till twenty-one years old a servant to the first owner or his assigns, and the plaintiffs below claim her in the latter character. The objection that her services, if offered for sale by the assignees at public auction, will be an outrage upon humanity, if allowed its full weight, would do away slavery itself by an act of the court. Another objection is that apprentices are not assignable in law, but however it may be with apprentices, a servant under this statute is made expressly assignable; and here there is a direct assignment to the plaintiffs *below, which [*173 gave them a clear right to recover as they did, and the judgment must be affirmed.
Drake, J., concurred.
Judgment affirmed.